UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

           v.                                           5:18-CR-9 (FJS)

**SHAQUILLE BRELAND also known as Shaq,**

                **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **OFFICE OF THE UNITED STATES ATTORNEY**<br>James Hanley U.S. Courthouse<br>& Federal Building<br>100 South Clinton Street<br>P.O. Box 7198<br>Syracuse, New York 13261-7198<br>Attorneys for the United States | **NICOLAS COMMANDEUR, AUSA** |
| **OFFICE OF STEPHEN LANCE CIMINO**<br>247 West Fayette Street, Suite 315<br>Syracuse, New York 13202-2200<br>Attorneys for Defendant | **STEPHEN LANCE CIMINO, ESQ.** |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

A federal grand jury charged Defendant in a three-count Superseding Indictment as follows:

**COUNT 1**
**[Obstructing Justice By Retaliation]**
On or about December 9, 2017, in the Northern District of New York, the defendant, **SHAQUILLE BRELAND (aka "SHAQ")**, did attempt to kill a person with the intent to retaliate against that person for providing to a law enforcement officer information relating to the commission of a Federal offense, in violation of Title 18, United States Code, Section 1513(a)(1)(B).

## COUNT 2
### [Conspiracy to Retaliate]

On or about December 9, 2017, in the Northern District of New York, the defendant, **SHAQUILLE BRELAND (aka "SHAQ")** conspired with Georvan Harris (aka "Boomer") to threaten to cause bodily harm and damage the tangible property of a person with the intent to retaliate against a person for information relating to the commission of a federal offense given by a person to a law enforcement officer, in violation of Title 18, United States Code, Section 1513(b)(2).

In furtherance of the conspiracy, the defendant **SHAQUILLE BRELAND (aka "SHAQ") and co-conspirator GEORVAN HARRIS (aka "BOOMER")** took the following overt acts:
1. **SHAQUILLE BRELAND (aka "SHAQ")** chased a sedan on foot;
2. **SHAQUILLE BRELAND (aka "SHAQ") and GEORVAN HARRIS (aka "BOOMER")** chased that sedan in a sport utility vehicle driven by **GEORVAN HARRIS (aka "BOOMER")** with **SHAQUILLE BRELAND (aka "SHAQ")** as a passenger and fired shots at the sedan using a 9 mm pistol.

All in violation of Title 18, United States Code, Section 1513(f).

## COUNT 3
### [Using and Carrying Firearm During and In Relation to a Crime of Violence]

On or about December 9, 2017 in the Northern District of New York, the defendant, **SHAQUILLE BRELAND (aka "SHAQ")**, during and in relation to a crime of violence, for which he may be prosecuted in a court of the United States, that is Obstructing Justice By Retaliation, in violation of Title 18, United States Code, Section 1513(a)(1)(B), knowingly used and carried a firearm, that is, a 9 millimeter pistol, in violation of Title 18, United States Code, Section 924(c)(1)(A). That firearm was discharged, in violation of Title 18, United States Code, Section 924(c)(1)(A)(iii).

*See* Dkt. No. 40, Superseding Indictment.

Pending before the Court is Defendant's motion seeking to resolve various pretrial issues and to suppress certain evidence obtained as a result of the execution of search warrants at 17 Maxwell Court, Syracuse, New York, and 5640 East Taft Road, Syracuse, New York.

## II. DISCUSSION

A.   **Defendant's request for a Bill of Particulars**

The decision whether to grant a bill of particulars lies within the court's sound discretion. *See United States v. Davis*, No. 5:09-CR-390, 2010 WL 11507495, *1 (N.D.N.Y. Sept. 21, 2010) (Mordue, J.) (citations omitted). A court should grant such a motion only where the motion is necessary "(1) to inform the accused of the charge against him with sufficient precision to enable him to prepare his defense and avoid surprise; and (2) to enable the accused to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Id.* (citations omitted).

The Government, however, is not required to particularize its evidence. *See id.* (citations omitted). Therefore, "[a] bill of particulars is not required unless the charges in the indictment are so general that they fail to apprise the defendant of the specific acts of which he is accused." *Id.* (citations omitted). Furthermore, "[s]upplying evidentiary detail is not the function of the bill of particulars." *Id.* (citation omitted). Nor is a bill of particulars intended "to be a method for compelling disclosure of the government's evidence prior to trial." *Id.* (citation omitted). Thus, if the information the defendant seeks "is provided in the indictment or through some other means, a bill of particulars is not necessary." *Id.* (citing *Bortnovsky*, 820 F.2d at 574).

Defendant seeks particularity concerning the date when he joined the alleged conspiracy and when and under what circumstances the alleged conspiracy was formed. However, a review of the Superseding Indictment demonstrates that a bill of particulars is not necessary.

The Superseding Indictment provides information about the date on which the overt acts in furtherance of the conspiracy occurred, *i.e.*, December 9, 2017, lists those overt acts, and provides

details about the conspiracy itself. In addition, Defendant acknowledges that the Government has provided him with a great deal of discovery. For all these reasons, the Court finds that the Superseding Indictment, together with the information and discovery that the Government has provided to Defendant, informs him of the charges against him in this case and the basis for those charges. Therefore, the Court **denies** Defendant's request for a bill of particulars.

**B.      Defendant's request for discovery and inspection**

Based on the parties' submissions, there does not appear to be any real dispute that the Government has met its obligations under Rule 16, *Brady*, Rule 404(b), and with regard to expert disclosures. *See* Dkt. No. 42, Defendant's Reply, at ¶ 5. Furthermore, Defendant offers no response to the Government's argument that he is not entitled to disclosure of informants. Therefore, based on the Government's assurance that it is well aware of its obligations and has complied with these obligations, the Court **denies** Defendant's motion with regard to these issues.

**C.      Defendant's request for early disclosure of Jencks and *Giglio* material**

Under the Jencks Act, the Government is not required to produce a witness' statements until after the Government calls that witness to testify. *See* 18 U.S.C. § 3500. Furthermore, the Second Circuit has held that the "Jencks Act prohibits a District Court from ordering the pretrial disclosure of witness statements." *United States v. Coppa*, 267 F.3d 132, 145 (2d Cir. 2001) (citations omitted); *see also United States v. Allen*, 289 F. Supp. 2d 230, 241 (N.D.N.Y. 2003) (stating that "*Giglio* . . . mandates the disclosure of impeachment-type materials relating to the government's witnesses, which is properly disclosed when the witness is called to testify at trial" (citation

omitted)).  Nonetheless, the Government indicates that it will confer with Defendant's counsel about early disclosure of Jencks materials under a protective order.  Therefore, the Court **denies** Defendant's motion for early disclosure of Jencks and *Giglio* material.

D.      **Defendant's request for additional peremptory challenges**

Rule 24 of the Federal Rules of Criminal Procedure provides, in pertinent part, as follows:

> **(b) Peremptory Challenges.**  Each side is entitled to the number of peremptory challenges to prospective jurors specified below.  The court may allow additional peremptory challenges to multiple defendants, and may allow the defendants to exercise those challenges separately or jointly.
>
> * * * * * * * * * *
>
> **(2) Other Felony Case.**  The government has 6 peremptory challenges and the defendant . . . ha[s] 10 peremptory challenges when the defendant is charged with a crime punishable by imprisonment of more than one year.

Fed. R. Crim. P. 24(b)(2).

A court has broad discretion to grant or deny additional challenges.  *See Davis*, 2010 WL 11507495, at *5 (citation omitted).

The Court **reserves decision** on this issue until the Final Pretrial Conference, at which time the Court will further discuss this issue with counsel.

E.      **Defendant's request for an audibility hearing**

In response to Defendant's request for an audibility hearing, the Government points out that, although Defendant requests an audibility hearing regarding any electronic interceptions or conversations that the Government seeks to use against him at trial, he does not specify which

conversations, if any, require such a hearing. *See* Dkt. No. 38 at 8. In response, Defendant merely states that he assumes that, at the time that the Government prepares its exhibits for trial, it will prepare recording exhibits that will be played to the jury, provided the Government lays a proper foundation, and that he has a right to receive a copy of all such recordings to determine their audibility prior to trial. *See* Dkt. No. 42 at ¶ 8.

Based on the parties' submissions, there does not appear to be anything for the Court to decide at this time. Therefore, the Court **denies** Defendant's request for an audibility hearing with leave to renew his request once he has received the copies of any recordings and the transcripts of those recordings and determines if such a motion is required.

F.    **Defendant's motion to suppress evidence**

To suppress evidence seized pursuant to a court-authorized search warrant, a defendant must show that "(1) there was inadequate probable cause to support the issuance of the warrant, and (2) even if the warrant was invalid for lack of probable cause, the officers who executed the search failed to act in objectively reasonable reliance upon the subsequently invalidated warrant." *United States v. Griffin*, No. (S6) 94 CR. 631, 1996 WL 140073, *4 (S.D.N.Y. Mar. 27, 1996) (citing *United States v. Leon*, 468 U.S. 897 (1984)). In deciding whether there was probable cause, "a reviewing court must give substantial deference to the judicial officer's prior finding of probable cause." *Id.* Moreover, the court must test and interpret the affidavit that supported the application "'in a commonsense and realistic fashion.'" *Id.* (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965)); *see also United States v. Travisano*, 724 F.2d 341, 345 (2d Cir. 1983) (explaining that a reviewing court's "after-the-fact examination of the papers is not to be *de novo* review. . . .

[Rather,] [i]t should start with the proposition that the magistrate's finding of probable cause is entitled to substantial deference. . . ." (internal citations omitted)).

In particular, when "assessing whether probable cause supported the issuance of the warrant to search a residence, the Court must consider whether the application in support of the warrant contained two factual showings: '[F]irst, that a crime was committed, and second, that there is probable cause to believe that evidence of such crime is located at the residence.'" *Griffin*, 1996 WL 140073, at *5 (quoting *Travisano*, 724 F.2d at 345). Furthermore, "[p]robable cause 'need not be based on direct first-hand, or "hard" evidence.'" *Id.* (quoting *United States v. Thomas*, 757 F.2d 1359, 1367 (2d Cir.), *cert. denied*, 474 U.S. 819 (1985)).

Finally, if the court determines that there was not probable cause to support the search warrant, "the Court still must deny the motion to suppress if it determines that the officers who conducted the search acted in good faith reliance upon the warrant." *Id.* "The Supreme Court has repeatedly cautioned that the exclusionary rule should be narrowly confined to situations in which its application is necessary to deter official misconduct." *Id.* (citations omitted). Finally, "the Supreme Court has held that the harsh remedy of suppression should not apply where evidence is 'obtained in objectively reasonable reliance on a subsequently invalidated search warrant . . . .'" *Id.* (quoting *Leon*, 468 U.S. at 922).

In support of his motion, Defendant does not state, with any specificity, what the deficiencies are in the warrant applications, the affidavits in support of those applications, or the warrants themselves. In addition, he acknowledges that he has no information that the officers who executed the warrants acted in bad faith. Therefore, the Court **denies** Defendant's motion to suppress evidence that law enforcement recovered as a result of executing the search warrants in

question.

### III. CONCLUSION

Having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's request for additional peremptory challenges is **RESERVED**; and the Court further

**ORDERS** that Defendant's request for an audibility hearing is **DENIED with leave to renew if necessary**; and the Court further

**ORDERS** that all of Defendant's other requests contained in the pending motion, *see* Dkt. No. 29, are **DENIED**.

**IT IS SO ORDERED.**

Dated: November 19, 2018
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge